Richard G. BENNETT *v.* STATE of Arkansas

CR 89-149 789 S.W.2d 436

Supreme Court of Arkansas
Opinion delivered April 30, 1990

*Martin, Vater, Karr & Hutchinson*, by: *W. Asa Hutchinson*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. This case is on appeal for the second time. The appellant, Richard G. Bennett, previously was found guilty of first degree murder and sentenced to life imprisonment. We reversed that conviction, holding that it was prejudicial error to admit prosecution testimony by deposition in the absence of a showing of unavailability of the witness. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). A change of venue was granted, and upon retrial, the appellant was again convicted and sentenced to life imprisonment. Again, we must reverse and remand for another trial.

Appellant makes two assignments of error which he contends mandate reversal and dismissal. Neither one has merit. He makes six other assignments of error which he contends mandate reversal and remand. One of them is meritorious. It concerns the time and manner of giving instructions. By necessity, we first address those points asking for reversal and dismissal.

Appellant argues that his conviction must be reversed and dismissed because of insufficiency of evidence. The argument is without merit. Essentially the same evidence was presented in this case as was presented at the first trial. In our earlier *Bennett* decision, this court declared:

> Based on the foregoing [recitation of evidence], we conclude that there is substantial evidence to support the verdict of guilt.

297 Ark. at 122, 759 S.W.2d at 803.

■ Where essentially the same evidence was presented at this second trial as in the first, and the appellant in his brief concedes that the evidence is essentially the same, the doctrine of the law of the case applies and sufficiency of the evidence is not a ground for reversal. *Henderson* v. *State*, 284 Ark. 493, 684 S.W.2d 231 (1985).

Appellant next argues that his conviction must be reversed and dismissed because of a delay of nine years in the filing of charges. This argument is also without merit.

On the day following the victim's death, the appellant gave a statement to the sheriff, a deputy sheriff, and a state police investigator. At the time the police did not know the victim had been murdered. The men met in a motel room in the presence of Carl Glass, appellant's attorney. Glass died in 1985, before the murder charge was filed.

In dragging the river where the victim was found, the authorities found a coat, a blanket, and a lantern cover, which were identified as items worn or used by the victim. The sheriff took custody of some fishing equipment found nearby as well as the aforementioned items found in the water. The appellant claimed that he gave the victim's ring to the sheriff; an assertion the sheriff denied. In any event, none of the aforementioned evidence could be produced by the sheriff's office by the time of trial.

The appellant contends that the delay in charging until after the death of the attorney was prejudicial and insists that when it is coupled with loss of the items of evidence from the sheriff's office, a dismissal of the charge is mandated.

■ We have recognized that there may be instances where prosecutorial delay in the bringing of criminal charges may constitute prejudicial error requiring a dismissal of those charges. Simply because the statute of limitations has not run, the State is not justified in unduly delaying the filing of charges. *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984). The key element, of course, is whether or not a prejudice results which would require a dismissal.

■ All of the witnesses testified about the items of property recovered at the scene with the exception of the victim's ring. The testimony concerning the disposition of the ring would have been controverted regardless of whether the case had been tried immediately following the incident or several years later. Where no controversy existed regarding the items of property received by the sheriff, it cannot be said that, simply because the property was not physically present at the trial, prejudice occurred.

■ Further, there is no allegation that the deceased attorney had any special knowledge which would have proved beneficial to the appellant at trial. Even though the attorney was present when the appellant gave his statement, the fact that he died before the appellant was charged fails to establish prejudice justifying a dismissal of the charges.

Appellant's next assignment of error is well taken. It concerns the time and manner of giving instructions to the jury and requires reversal and remand for yet another trial.

The trial judge did not orally instruct the jury at the conclusion of the evidence. Instead, after voir dire and before opening statements he orally instructed on the respective duties of judge and jury (AMCI 101); personal observations and experiences (AMCI 103); credibility of witnesses (AMCI 104); expert witness (AMCI 105); circumstantial evidence (AMCI 106); burden of proof (AMCI 107); the filing of the information not to be considered as evidence (AMCI 108); presumption of innocence (AMCI 109); reasonable doubt (AMCI 110); and first degree murder (AMCI 1502 and 1507).

Four days later, at the conclusion of the case, counsel for the appellant requested that the court again instruct the jury on all the applicable law. The court refused the request to repeat the

instructions but did give oral instructions on the character evidence (AMCI 204) and the range of punishment (AMCI 6100).

Following closing arguments and upon the retirement of the jury to deliberate, all of the instructions were given to the jurors in written form, for their use during deliberation. Appellant argues that the procedure used was in violation of the applicable law and he was prejudiced. The argument is well taken.

Arkansas Code Annotated § 16-89-125 provides:

> *When the evidence is concluded*, the court shall, on motion of either party, instruct the jury on the law applicable to the case . . . .

The meaning of the statute is so clear that it does not need interpretation. It means just what it says.

The State, tacitly acknowledging its vulnerable position on this point, argues that A.R.Cr.P. Rule 33.3, when read in conjunction with the above quoted statute, authorizes the procedure utilized in this case. Rule 33.3 provides that upon request of counsel or juror "it shall be the duty of the presiding judge to deliver to the jury immediately prior to its retirement for deliberation a typewritten copy of the oral instructions given the jury." Rule 33.3 does not contravene or modify the statute. The rule is based upon the assumption that oral instructions are to be given at the conclusion of the evidence. The action of the trial judge in giving all but two of the oral instructions at the beginning of the trial was in violation of the statute.

The State argues that the error was harmless since all of the instructions were repeated at the conclusion of the trial by the trial judge giving the jury copies of the written instructions. We reject the argument.

Ten of the instructions were given orally at the beginning of the trial. At the end of the trial, four days later, two others were given orally. Under such circumstances jurors most likely selected and evaluated evidence concerning the subject matter of the initial ten instructions differently than they evaluated evidence dealing with the subject matter of the later two instructions. As described by Elwork, Sales, and Alfini, *Making Jury*

*Instructions Understandable*, § 1-4(b) (1982):

> Psychologists have for years made distinctions between incidental and intentional learning. When given instructions as to what material they are expected to learn, people will learn it more effectively by concentrating on the relevant parts and paying less attention to the irrelevant ones. This effect has been shown empirically with many different types of materials and in many situations. Thus, it is reasonable to assume that if jurors knew what is relevant to their verdict at the beginning of a trial, they would be better able to focus on relevant evidence as it is being presented, and later remember it.

On the other hand, when instructions are given at the end of a trial, jurors probably evaluate the evidence on the basis of their own sense of justice. As explained in *Making Jury Instructions Understandable, supra*:

> [C]harging a jury at the end of a trial assumes that they passively listen to all of the evidence without evaluating it. For years psychologists have made similar assumptions about people who participated in their experiments. Recently, an entire area of research has refuted that assumption. Many researchers have shown that people in psychological studies do their best to figure out what the experiment is about and what the experimenter is trying to prove, and then proceed intentionally to make the experiment a success, although some do just the opposite. This entire area of research asserts that people are never passive receivers of information, but rather are constantly and actively interpreting information and trying to find its meaning. If people are not passive in an experimental study, we have no reason to assume that jurors can be passive during a trial, a social situation in which human emotion is constantly displayed. Psychological knowledge would suggest that jurors are, like everyone else, active and selective receivers of information. Thus, it is reasonable to assume that while waiting for the instructions to be given at the end of the trial, jurors probably select and evaluate evidence in terms of their own sense of morality and justice.

Accordingly, the timing of the giving of instructions can

make a difference in a verdict. As explained in *Making Jury Instructions Understandable, supra*:

> [T]wo studies have directly examined the effects of the timing of presentation of jury instructions. In one study, we found that the presentation of jury instructions before the evidence resulted in jurors having different sets of beliefs about the facts of a case. This finding can be understood in light of the arguments we presented above; that is, by presenting instructions at the beginning of a trial, jurors are more likely to selectively remember portions of the evidence that are truly legally relevant, as opposed to those that jurors might assume are relevant when they do not have the benefit of the instructions. What effect might a different set of beliefs about the facts have on a trial's outcome? The answer is obvious, but for the benefit of doubters, two researchers empirically demonstrated that the presentation of instructions before the trial creates changes in verdicts.

By mixing the time of giving instructions so that some are given at the beginning of the trial and some are given at the end of the trial, the jurors in this case most likely evaluated some of the evidence by selective recollection and the rest by their incidental recollection. No person should have his liberty judged under such circumstances.

Prejudice may well have resulted for another, and even more important, reason. The trial judge initially instructed the jury on everything except character evidence and the range of punishment. Then, four days later, instructed on those two subjects. The jurors may well have inferred that the much respected trial judge, after hearing the evidence, thought the accused was guilty, and that is the reason he waited to give the punishment instruction. Certainly it was emphasized, and one instruction should not be emphasized over others. *Price v. State*, 114 Ark. 398, 170 S.W. 235 (1914).

Three other assignments of error must be addressed because they will likely arise again upon retrial, but none of them have merit.

In the first of these appellant argues that a statement he gave

should be suppressed as evidence. The pertinent facts are as follows. On the day following the victim's death, the appellant, his attorney, the sheriff, a deputy sheriff, and a state police investigator met in a motel room for the express purpose of obtaining a statement from the appellant. Without giving any warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), the investigator asked the appellant to describe what had occurred the previous night. The appellant then made an oral statement.

Prior to the trial, a motion to suppress the appellant's statement was filed, and after a hearing, the court denied the motion. The state police investigator denied that the appellant was suspected of any crime at that time; in fact, at that point the victim's body had not been recovered from an apparent natural drowning.

As noted in *Gardner v. State*, 296 Ark. 417, 54 S.W.2d 518 (1988), the warnings required by *Miranda v. Arizona, supra*, come into play only when the defendant is subjected to custodial interrogation or its functional equivalent. No *Miranda* warning is required if the questioning is purely investigatory.

At the time the statement was made, an attorney was present who identified himself as the appellant's counsel. The appellant testified at the suppression hearing that he did not feel compelled to stay or to talk to the officers. These circumstances presented a question for the trial court's resolution. We cannot say that a denial of the motion to suppress constitutes error.

The appellant next contends that the trial court committed reversible error in permitting the sheriff to testify as an expert witness. The trial court did not abuse its discretion because the sheriff testified he had a great deal of experience concerning the subject of his testimony.

Appellant next argues that the trial court erred in refusing to admit into evidence a letter, but the letter in question is not abstracted as required by *Cox v. State*, 298 Ark. 312, 772 S.W.2d 336 (1989). We have consistently held that the record to be considered on appeal is confined to that which has been abstracted. *Lee v. State*, 297 Ark. 421, 762 S.W.2d 790 (1989).

Appellant raises two additional points of appeal, neither of which has merit and neither of which is likely to arise upon retrial.

Accordingly, we do not address them.

Reversed and remanded for a new trial.